# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**Kathleen Lorraine Wing**                                                                 **Plaintiff**

**v.**                           **No. 4:15CV00040 JLH-JTR**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                         **Defendant**

## Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge J. Leon Holmes. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Holmes may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Kathleen Lorraine Wing ("Wing") seeks judicial review of the denial of her application for social security disability benefits.[3] In the past, Wing worked as a licensed practical nurse in nursing homes.[4] She stopped working in November 2011. She claims she has been disabled since that time. She based disability on a herniated disk, diabetes type II, anxiety, depression, essential and other forms of tremor, migraines, acute suppurative otitis media without spontaneous rupture, acute pharyngitis, abdominal pain, nausea, abnormal blood chemistry, and allergies.[5]

**The Commissioner's decision**. After considering the application, the ALJ identified severe impairments — a herniated disc, diabetes, anxiety, depression, carpal tunnel syndrome, and obesity[6] — but determined Wing can do some light work,[7] to include her past work as a receptionist.[8] The ALJ also identified other available work

---

[3]SSA record at pp. 197 & 204 (applying onset on Feb. 1, 2012 and alleging onset on Nov. 5, 2011).

[4]*Id*. at p. 235, 260, 346 & 355.

[5]*Id*. at p. 233.

[6]*Id*. at p. 70.

[7]*Id*. at p. 72.

[8]*Id*. at p. 76.

that Wing can do.[9] The ALJ concluded that Wing is not disabled and denied the application.[10]

After the Appeals Council denied review,[11] the ALJ's decision became the Commissioner's final decision for the purpose of judicial review.[12] Wing filed this case to challenge the decision.[13] This recommendation explains why the court should affirm the decision.

**Wing's allegations**. Wing challenges most aspects of the decision: (1) she contends the ALJ failed to fully and fairly develop the record — she says the ALJ should ordered a consultative mental exam; (2) she claims the ALJ failed to consider evidence detracting from unfavorable findings, particularly statements about medication side effects, insomnia, depression, fatigue, and stress; (3) she challenges the evaluation of her credibility — the decision, she says, is inconsistent with the ALJ's hearing statement about the credibility of her testimony; (4) she maintains the

---

[9]*Id.* at p. 77.

[10]*Id.* at p. 78.

[11]*Id.* at p. 1.

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[13]Docket entry # 1.

ALJ should have articulated the amount of weight given treating source medical evidence; and (5) she disagrees with the determination that she can do some light work, insisting she cannot do her past work.[14]

**Applicable legal principles**. When reviewing a decision denying an application for disability benefits, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[15] For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to support the determination that Wing can do some light work and that work exists that Wing can do.[16]

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[17] The ALJ determined Wing's impairments posed non-exertional limitations and placed the following

---

[14] Docket entry # 9.

[15] *See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[16] *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) (substantial evidence exists if a reasonable mind will accept evidence as adequate to support conclusion).

[17] 20 C.F.R. §§ 404.1567(b) & 416.967(b).

limitations on light work:

(1) occasional climbing ramps/stairs, balancing, stooping, and crouching;

(2) no climbing ladders/ropes/scaffolds;

(3) frequent kneeling or crawling;

(4) frequent handling and fingering with the right hand,

(5) avoid moderate exposure to hazardous machinery and unprotected heights;

(6) avoid moderate exposure to fumes, dusts, gases, and poorly ventilated areas;

(7) jobs allowing the use of a hand-held assistive device for balance during prolonged ambulation;

(8) routine but superficial incidental interpersonal contact;

(9) tasks with several variables, learned by experience; and

(10) little supervision for routine tasks and detailed supervision for non-routine tasks.

The question for the Court is whether a reasonable mind will accept the evidence as adequate to show Wing can work within these parameters. This question must be answered in the affirmative for the following reasons:

**1. The medical evidence supports the ALJ's RFC determination.**
The claimant must prove her case with medical evidence; her subjective

allegations are not enough to prove she is disabled.[18]  Wing presented medical evidence, but it doesn't support all required limitations.

Wing's most limiting impairment is likely diabetes.  She's had diabetes since 1996.  Since then, Wing received treatment for diabetes and worked as a LPN.  Receiving treatment and working indicates treatment controls Wing's symptoms.  An impairment that can be controlled by treatment isn't disabling under social security law.[19]

A treatment note written 11 days before Wing stopped working is particularly probative.  On that day, Wing told her doctor that she had been feeling great.[20]  Feeling great is inconsistent with alleging disabling symptoms 11 days later, where evidence generated shortly afterward suggests no deterioration.  The inconsistency weighs against Wing's subjective allegations.

---

[18]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. §§ 404.1508 & 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. §§ 404.1529 & 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

[19]*Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[20]SSA record at p. 358.

After she stopped working, Wing lost her medical insurance. A few months later, she established care at an indigent care clinic and obtained prescribed medication from the clinic. Her doctor encouraged her to work very hard on losing weight and to walk after every meal.[21] The recommendation to walk after every meal contradicts Wing's claim that she can barely walk. Her clinic doctor suspected "if she will control her diabetes [it] will take care of itself."[22]

2. **Medical expert opinion supports the ALJ's decision**. The Commissioner's regulations permit an ALJ to obtain expert medical opinion to help in determining the nature and severity of the claimant's impairments, what the claimant can still do despite her impairments, and the claimant's physical or mental restrictions.[23]

According to medical experts, the medical evidence supports light work with postural and environmental limits.[24] These medical opinions are probative because they support Wing being able to perform light work; especially in light of the finding by one of her medical providers (made only five months before she stopped working) that Wing was limited to not lifting more than 50 pounds.[25] Agency medical opinion evidence is more limiting than treating source evidence, but it supports the ALJ's determination that Wing can lift 20 pounds.

Wing maintains the ALJ should have articulated the weight given to treating source medical evidence, but her argument applies to medical

---

[21]*Id*. at p. 545.

[22]*Id*. at p. 670.

[23]20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2).

[24]SSA record at pp. 527, 561 & 655.

[25]*Id*. at pp. 315 & 652.

opinion evidence, not all evidence.[26] The decision reflects a thorough consideration of treating source medical evidence, to include evidence preceding the time period for which benefits were denied.[27]

3. **Based on the record, there was no need for a mental diagnostic exam**. The ALJ must order "medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."[28] Treatment notes show Wing complained to medical providers about depression, but depression "is not necessarily disabling."[29]

While medical providers prescribed anti-depressants, that fact alone does not suggest a need for a consultative mental exam.[30] Wing lived with her fiancee, visited with her grandchildren, attended church, shopped for groceries, and talked on the phone with others on a daily basis. Wing had some formal mental health treatment from 2000 to 2002, but not since. Agency mental health experts characterized depression as not severe.[31] The evidence suggests no severe mental impairment.[32]

---

[26]The policy is set out in SSR 96-2p, *Pol'y Interpretation Ruling Titles II & XVI, Giving Controlling Weight to Treating Source Med. Opinions*.

[27]The ALJ discussed medical evidence beginning 11 years before the alleged onset date.

[28]*Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994).

[29]*Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

[30]*Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) ("The mere fact that [the claimant] has been prescribed antidepressants on at least one occasion is not enough to require the ALJ to inquire further into the condition by ordering a psychological evaluation.").

[31]SSA record at pp. 540 & 558.

[32]*Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012) ("If sufficient evidence alerts the ALJ to the possibility of a severe mental impairment, the ALJ must further

4. **Inconsistencies support the credibility evaluation**. An ALJ must evaluate the claimant's credibility because subjective complaints play a role in determining the claimant's ability to work.[33] To evaluate Wing's credibility, the ALJ followed the required two-step process and considered the required factors,[34] so the dispositive question is whether substantial evidence supports the credibility evaluation.

An ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the evidence as a whole."[35] The ALJ properly relied on inconsistency in discounting Wing's allegations. Wing reported disabling back pain that prevents walking, but diagnostic imaging shows no reason for such limitation. Imaging of the lumbar spine shows grade I (least severe) spondylolisthesis at level L5.[36] The least severe grade of spondylolisthesis can cause some pain, but not such severe pain as to prevent walking. Wing's doctor told her to walk after each meal. The doctor's recommendation is inconsistent with Wing's allegations.[37]

Wing ostensibly stopped working due to back pain. The imaging of the back supports the type of low back pain that might prevent the lifting needed to work as a LPN, but the ALJ required less lifting capacity and limited postural functions that can aggravate low back pain.

---

develop the record about mental impairments before ruling on the severity of the claimant's impairment(s).").

[33]*Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005).

[34]SSR 96-7p, *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[35]*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

[36]SSA record at p. 515. Wing claims a 2009 MRI showed a herniated disk at level T12-L1, but there's no medical evidence of a herniated disk.

[37]*Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013).

Inconsistencies support the credibility evaluation, but the record contains a statement that, on its surface, appears inconsistent with the credibility evaluation. During the hearing — when asked whether the ALJ wanted to hear testimony from Wing's fiancee — the ALJ stated, "Okay, well, I find her testimony to be credible, so I don't think that I need to hear from him."[38] In the decision, the ALJ "granted little probative weight to the claimant's testimony" because "the paucity of the evidence does not support the claimant's ultimate allegation of disability," and because her "ability to perform activities of daily living, in conjunction with the medical evidence demonstrating minimal abnormalities, reflects a significant functional capacity…."[39]

According to Wing, finding her testimony credible while granting her testimony little probative weight is inconsistent, but the ALJ's findings show the ALJ credited Wing's testimony, just not to the extent of being disabled. The following comparison of Wing's testimony with the ALJ's findings shows why there's really no inconsistency:

| Wing's testimony | ALJ's findings |
|---|---|
| Back pain prevents me from working as a LPN. Bending, lifting, and pushing a medicine chart causes back pain. | Wing experiences chronic low back pain. She's limited to light work involving occasional postural functions. She can no longer work as a LPN. |

---

[38] SSA record at p. 123.

[39] *Id.* at p. 76.

| | |
|---|---|
| I get dizzy and need a cane for balance. | Wing requires work that allows her to use a cane and doesn't involve balance risks: i.e., moderate exposure to hazardous machinery, unprotected heights, or climbing ladders/ropes/ scaffolds. |
| I have a herniated disk at level T12/L1.  (There's no medical evidence of a herniated disk.) | A herniated disk is a severe impairment.  Wing experiences chronic low back pain and requires work involving limited postural functions. |
| In the past, I had surgery for right carpal tunnel syndrome. (There's no medical evidence of carpal tunnel surgery.) | Carpal tunnel syndrome is a severe impairment.  Wing requires work involving a reduction in handling and fingering with the right hand. |
| Uncontrolled diabetes causes fatigue. | Non-compliance increases symptoms.  Wing's doctor said her symptoms will take care of itself if she will control her diabetes. |
| I don't like crowds and prefer to stay home.  Problems with sleep cause me to be irritable and can make it hard to concentrate. | Wing requires work involving routine but superficial incidental interpersonal contact; tasks with several variables, learned by experience; little supervision for routine tasks; and detailed supervision for non-routine tasks. |

The comparison shows the ALJ found Wing credible, but not to the extent that she can do no work. The ALJ properly relied on inconsistencies in assigning weight to Wing's testimony.

5. **Vocational evidence supports the decision**. The determination that Wing can do her past work flows from testimony about past work. Wing testified that she hurt her back in 2004, working as a LPN. Her back didn't improve, so her employer assigned her to outpatient scheduling.[40] A vocational expert classified that work as sedentary, semi-skilled work as a receptionist.[41] The vocational expert classified her work as a LPN as medium work, performed as heavy work.

The ALJ asked a vocational expert whether a person with Wing's limitations can do past work.[42] According to the vocational expert, a person who can do light work with the ALJ's limitations can work as a receptionist.[43] That opinion supports the determination that Wing can do her past work as a receptionist. A person who can do her past work is not disabled under social security law.[44]

The ALJ asked about other available work. The vocational expert identified appointment clerk, information clerk and telephone solicitor as available jobs.[45] These jobs show work exists that Wing can do, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.

---

[40]*Id*. at pp. 92-93.

[41]*Id*. at pp. 124.

[42]*Id*. at pp. 125-26.

[43]*Id*. at p. 126.

[44]20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

[45]SSA record at p. 126.

**Conclusion and Recommended Disposition**

Substantial evidence supports the ALJ's decision because a reasonable mind will accept the evidence as adequate to support the decision. Wing's impairments do not prevent her past work. The ALJ made no reversible legal error. For these reasons, the undersigned magistrate judge recommends DENYING Wing's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 18th day of July, 2016.

_____
United States Magistrate Judge